UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ALEJANDRO YOSEPF BATISTA,

Petitioner,

- against-

MARKWAYNE MULLIN, *et al.*,

Respondents.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-6550 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On October 10, 2026, petitioner Alejandro Yosepf Batista ("Petitioner") filed a petition for a writ of habeas corpus against respondents Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security, Kenneth Genalo, in his official capacity as Field Office Director for the New York City Field Office of U.S. Immigration and Customs Enforcement ("ICE"), Raul Maldonado, in his official capacity as Warden of the Metropolitan Detention Center, and Todd Blanche, in his official capacity as the Acting Attorney General of the United States ("Respondents"). *See generally* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Dkt. 1 ("Petition" or "Pet."). Petitioner challenges his detention as unreasonably prolonged in violation of the Fifth Amendment Due Process Clause of the United States Constitution ("Fifth Amendment"). *Id.* at 18-19. Petitioner asks that the Court order he be immediately released from ICE's custody, or in the alternative, that he receive a constitutionally adequate bond hearing before this Court or another neutral adjudicator at which Respondents bear the burden of proof to establish flight risk and dangerousness by clear and convincing evidence. *Id.* ¶¶ 2, 62.

For the following reasons, the Petition's request for a bond hearing is granted.

## BACKGROUND

### A. Petitioner's History

Petitioner is a native and citizen of the Dominican Republic. Pet. ¶ 17. On November 21, 2024, Petitioner entered the U.S. near Eagle Pass, Texas. *Id.*; Declaration of Leonel Paulino ¶ 2, Dkt. 11 ("Paulino Decl."). Upon crossing the border, Petitioner was arrested, charged with trespass under the Texas Penal Code, and detained in criminal custody. Pet. ¶ 18. On November 22, 2024, an ICE officer interviewed Petitioner, determined Petitioner was subject to removal proceedings, and lodged an immigration detainer, Form I-247A, requesting the local Texas authorities notify ICE before releasing Petitioner. Paulino Decl. ¶ 4. Petitioner's family posted bail and, on December 17, 2024, Petitioner was released from criminal custody into immigration custody. *Id.* ¶ 5; Pet. ¶ 18. Once in immigration custody, ICE served Petitioner with a Warrant for Arrest of Alien, Form I-200, and Notice to Appear, Form I-862, the latter of which charged Petitioner as inadmissible to the U.S. pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(6)(A)(i). Paulino Decl. ¶ 6. Later that day, ICE released Petitioner from immigration custody on an Order of Recognizance, Form I-220A, and enrolled Petitioner in ICE's Alternative to Detention ("ATD") Program. *Id.* ¶ 7. Petitioner then traveled to New York to reunite with his family. Pet. ¶ 20.

On January 3, 2025, ICE commenced removal proceedings against Petitioner. Paulino Decl. ¶ 8. On January 22, 2025, Petitioner attended an initial hearing at New York Immigration Court, located at 290 Broadway, New York, New York 10278. *Id.* ¶ 9. On February 3, 2025, Petitioner appeared virtually from New York for his Texas criminal case and ultimately pleaded

nolo contendere to a B-misdemeanor trespassing offense in violation of the Texas Penal Code and was sentenced to 25 days of confinement. *Id.* ¶ 10; Pet. ¶ 18.

Between May 2025 and December 2025, Petitioner missed several self-report check-ins with the ATD program. Paulino Decl. ¶¶ 11-14. On December 5, 2025, ICE terminated Petitioner from the ATD Program. *Id.* ¶ 15. On February 4, 2026, Petitioner appeared at New York Immigration Court and requested more time to retain an attorney. *Id.* ¶ 16. The Immigration Judge ("IJ") adjourned the matter to October 7, 2026. *Id.*

**B. Petitioner's Arrest by ICE and Subsequent Detention**

On June 24, 2026, ICE determined Petitioner posed a threat to public safety because of his February 3, 2025, conviction for criminal trespass and issued a Warrant for Arrest of Alien, Form I-200. Paulino Decl. ¶ 17. On June 25, 2026, ICE cancelled Petitioner's Order of Release on Recognizance, and detained Petitioner as he left a routine immigration court hearing at New York Immigration Court. *Id.* ¶¶ 18-20; Pet. ¶ 24. After arrest, ICE conducted an individualized custody review and concluded that based on Petitioner's conviction and failure to comply with the conditions of the ATD Program, he had violated the terms and conditions of his release and presented a danger to society. Paulino Decl. ¶ 21. ICE provided Petitioner with a Notice of Custody Determination, Form I-286, indicating that Petitioner would be detained pending the outcome of removal proceedings. *Id.* Petitioner requested that an IJ review ICE's custody determination. *Id.* Petitioner was brought to ICE's temporary hold room located at 26 Federal

Plaza, New York, New York 10278, for processing where he was served with a Warrant for Arrest of Alien, Form I-200, and a Notice of Custody Determination, Form I-286. *Id.* ¶ 22.

### C. Petitioner's Previous Habeas Petitions

Also on June 25, 2026, Petitioner filed a habeas corpus petition in the Southern District of New York. *Id.* ¶ 24; Exhibit A, Dkt. 11-1 ("SDNY Petition")[1]; Pet. ¶ 25. Petitioner alleged that his detention violated the Fifth Amendment and the Administrative Procedure Act ("APA"). SDNY Petition ¶¶ 25-41. Petitioner sought immediate and unconditional release from ICE custody. *Id.* at 11. On June 26, 2026, Petitioner was transferred to the Delaney Hall Detention Facility in Newark, New Jersey. Paulino Decl. ¶ 25. On June 30, 2026, Petitioner filed an amended habeas corpus petition in the Southern District of New York. *Id.* ¶ 26; Paulino Decl., Exhibit B, Dkt. 11-2 ("Amended SDNY Petition"). On July 6, 2026, Petitioner appeared in New York Immigration Court via teleconference, *pro se*, where he withdrew his bond hearing request without prejudice for the purpose of wanting to speak with a lawyer. *See* Paulino Decl. ¶ 28.

On July 9, 2026, ICE transferred Petitioner's case to the Elizabeth Immigration Court in New Jersey and scheduled a hearing for July 21, 2026. Paulino Decl. ¶ 27. On July 30, 2026, a judge at the Southern District of New York dismissed the habeas petition, finding Petitioner had not exhausted his administrative remedies, particularly the availability of a bond hearing at the Elizabeth Immigration Court. *Id.* ¶ 28; Paulino Decl., Exhibit D, Dkt. 11-4 ("Exhibit D - SDNY Dismissal July 28, 2026 Order"); Pet. ¶ 25. On August 11, 2026, Petitioner, through counsel, filed a bond redetermination request with the Elizabeth Immigration Court. Paulino Decl. ¶ 30; Pet.

[1] When citing to exhibits within the Paulino Decl., the Court refers to the page numbers contained in the automatically generated ECF header.

¶ 26. On August 13, 2026, at an initial bond hearing, an IJ found that he did not have jurisdiction to set bond for Petitioner and did not reach the merits of Petitioner's request for bond. Pet. ¶ 26.

On August 18, 2026, Petitioner filed a second habeas corpus petition in the District of New Jersey. Paulino Decl. ¶ 32; Paulino Decl., Exhibit F, Dkt. 11-6 ("DNJ Petition"); Pet. ¶ 27. In this second petition, Petitioner again alleged his detainment as unlawful under the Fifth Amendment, the APA, and the INA. DNJ Petition ¶¶ 55-73, 29-33. Petitioner again sought immediate and unconditional release, but now in the alternative a bond hearing before a neutral adjudicator where the Government bears the burden of proof of establishing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. *Id.* at 22.

On August 21, 2026, an individual merits hearing was held at Elizabeth Immigration Court, and an IJ ordered Petitioner removed to the Dominican Republic. Paulino Decl. ¶ 33. Petitioner's appeal of this removal decision is pending with the Board of Immigration Appeals ("BIA"). *Id.* On August 25, 2026, a judge at the District of New Jersey Court ordered that Petitioner receive a bond hearing pursuant to 8 U.S.C. § 1226(a). Pet. ¶ 27.

On September 1, 2026, a bond hearing was held. Paulino Decl. ¶ 35; Pet. ¶ 28. The IJ denied bond, concluding that Petitioner was a flight risk. Paulino Decl. ¶ 35; Paulino Decl., Exhibit I ("September 1, 2026 Order"); Pet. ¶ 28. Petitioner's appeal of this IJ decision is also currently pending before the BIA. Pet. ¶ 28. On September 3, 2026, the United States District Judge in the District of New Jersey dismissed Petitioner's habeas petition. Paulino Decl. ¶ 36.

On September 16, 2026, Petitioner was transferred from the Delaney Hall Detention Facility in New Jersey to the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

Paulino Decl. ¶ 37. On October 10, 2026, Petitioner filed this habeas corpus petition with the Eastern District of New York. *Id.* ¶ 39; Pet. ¶ 31.

Petitioner remains detained at MDC. Paulino Decl. ¶ 40; Pet. ¶ 3.

**DISCUSSION**

Petitioner asserts that he has been subject to an unreasonably prolonged detention of nearly four months in violation of his procedural due process rights, and seeks to be immediately released from ICE custody, or alternatively, "that he receive a constitutionally adequate bond hearing before this Court or another neutral adjudicator at which Respondents bear the burden of proof to establish flight risk and dangerousness by clear and convincing evidence and, further, at which alternatives to detention are considered as to both elements and ability to pay is considered in setting any bond." Pet. ¶¶ 1-2, 33-34. Respondents contend the instant petition should be denied either for an abuse of the writ or on the merits, as Respondents contend Petitioner's detention is lawful and that a four-month detention is presumptively constitutional, not unreasonably prolonged. Respondents' Memorandum of Law in Response to the Order to Show Cause (October 19, 2026) at 1, 11-12, Dkt. 10 ("Return"). The parties agree that Petitioner is detained under 8 U.S.C. § 1226(a). *See* Return at 2; Pet. ¶¶ 34, 38.

**A. Abuse of the Writ**

The abuse of the writ doctrine holds that "a court need not entertain a petition that abuses the habeas process." *Esposito v. Ashcroft*, 392 F.3d 549, 550 (2d Cir. 2004); *see Cardona v. Taylor*, 17-CV-320 (GHW), 2017 WL 1291996, at *2 (S.D.N.Y. Apr. 3, 2017) (applying the abuse of the writ doctrine within the context of immigration detention). "[T]he 'abuse of the writ' doctrine is a substitute for res judicata in the context of [multiple] habeas petitions." *Cardona*, 2017 WL 1291996, at *2 (citing *Muniz v. United States*, 236 F.3d 122, 126 (2d Cir. 2001)). Accordingly, "a

[subsequent] petition may be abusive if the petitioner raises claims that he could have asserted in his prior petition, or repeats a previously asserted claim." *Id.* (citing *Esposito*, 392 F.3d at 550).

"[T]he government bears the burden of pleading abuse of the writ," by stating "with clarity and particularity" the petitioner's writ history, identifying the claims that appear for the first time, and alleging that the petitioner has abused the writ. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). "The burden to disprove abuse then becomes petitioner's." *Id.* Where the petitioner brings the same claims, he or she must show cause for cause doing so, "for instance, by showing the 'the discovery of new facts or an intervening change in the law.'" *Cardona*, 2017 WL 1291996, at *2 (quoting *Agoro v. United States*, 11-CV-1818 (SAS), 2011 WL 1330771, at *3 (S.D.N.Y. Apr. 4, 2011)). Where a petitioner raises claims that he or she could have raised in the first petition, he or she must "show cause for failing to raise [the claims] and prejudice therefrom." *McCleskey*, 499 U.S. at 494; *see id*. at 493-4 (holding that a petitioner must show that some "'objective factor external to the defense impeded counsel's efforts' to raise the claim" in the initial petition (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "If [a] petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* at 494-95.

Here, Petitioner has not abused the writ. Petitioner's two prior habeas petitions alleged a violation of the Fifth Amendment related to the process Petitioner was afforded prior to re-detention, as well as violations of the APA and INA. By comparison, the instant habeas petition raises a single claim—unreasonably prolonged detainment in violation of the Fifth Amendment—which Petitioner did not raise in either of his prior petitions. Indeed, at the time of both of Petitioner's previous habeas petitioners, a prolonged detainment claim may have been premature.

Although in Petitioner's habeas petition before the District of New Jersey he did, in the alternative, ask for the same relief he now requests from this Court—a bond hearing in which the Government bears the burden of proof—he did so on different grounds. *Cf. Kumar v. Maldonado*, 26-CV-3516 (OEM), 2026 WL 1802984, at *3 (E.D.N.Y. June 23, 2026) (finding abuse of the writ in an immigration habeas petition when a subsequent petition claimed "the same constitutional violation" as the prior petition and the "two claims raised for the first in the [subsequent p]etition that could have been raised" in the prior one).

Respondents also intertwine a contention that Petitioner has not exhausted available administrative remedies, namely the pending appeal of his denial of bond at the BIA, as another reason to support their allegations that Petitioner has abused the writ. *See* Return at 5-6. Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus," *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 489 (E.D.N.Y. Sep. 29, 2025) (quoting *Quintanilla v. Decker*, 21-CV-417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021)). "However, exhaustion is a 'prudential matter,' not a 'statutory requirement.'" *Id.* Courts in this Circuit have excused exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

"Here, waiver of the exhaustion requirement is warranted as the Petition raises a substantial constitutional question that cannot properly be adjudicated administratively." *Habib v. Maldonado*, 26-CV-2038 (OEM), 2026 WL 1088618, at *3 (E.D.N.Y. Apr. 22, 2026). Petitioner contends his unreasonably prolonged detention has violated substantive due process under the

Fifth Amendment, and that this constitutional violation warrants either release or a bond hearing at which the Government bears the burden of proof. The BIA is not positioned to properly adjudicate this constitutional claim, nor grant the latter form of request relief. *See United States v. Gonzalez-Roque*, 301 F.3d 39, 47-48 (2d Cir. 2002) ("[C]onstitutional claims lie outside the BIA's jurisdiction."). As such, the other remedies available to Petitioner do not alter the abuse of the writ calculus.

Under these circumstances, the Court declines to, in the exercise of its discretion, dismiss the petition as an abuse of the writ.

**B. Due Process**

Petitioner asserts that his prolonged detention violates his due process rights under the Fifth Amendment. *See* Pet. ¶¶ 32-35. Pursuant to 8 U.S.C. § 1226(a), a noncitizen "may be arrested and detained pending a decision" on removal, and "pending such decision" of removal the government may release the noncitizen on "bond." *See* 8 U.S.C. § 1226(a). To qualify for release on bond, a noncitizen must demonstrate he "would not pose a danger to property or persons" and that he is "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). In *Velasco Lopez v. Decker*, the Second Circuit held that "individuals subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing." 978 F.3d 842, 854 (2d Cir. 2020). The Second Circuit concluded that a new bond hearing where the government would bear the burden to justify continued detention "appropriately addressed the violation." *Id.* at 855. Although the Second Circuit declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a), to a new bond hearing with a shifted burden" it noted that "[t]he Supreme Court has held that noncitizens who have been ordered removed for having committed serious criminal offenses or having a long criminal history cannot be detained

indefinitely, and a presumptively constitutional period of detention does not exceed six months." *Id.* at 855 n.13.

In determining the adequacy of process in the context of civil immigration confinement, the *Velasco Lopez* Court applied the *Mathews v. Eldridge*, 424 U.S. 319 (1976), three-factor balancing test. *Id.* at 851. The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). This prong clearly favors Petitioner, now detained for nearly four months.

The second prong of the *Mathews* test, the risk of erroneous deprivation of that interest through the procedures used, also weighs in Petitioner's favor. At Petitioner's previous bond hearing, the IJ found that Petitioner "failed to meet his burden of establishing to the satisfaction of the Court that he does not pose a flight risk." *See* September 1, 2026 Order at 3. But "[a]s discussed in prior decisions before this Court, the denial of bond by the IJ because Petitioner, rather than Respondents, was unable to carry the burden of showing that he was neither dangerous nor a flight risk 'seriously impacted his ability to secure bail' due to the 'informational asymmetry'

caused by Petitioner's confinement." *Lupercio v. Genalo*, 26-CV-05321 (OEM), 2026 WL 2666844, at *5 (E.D.N.Y. Sep. 10, 2026) (quoting *Singh v. Francis*, 26-CV-00344 (OEM), 2026 WL 507890, at *5 (E.D.N.Y. Feb. 24, 2026); *see also Habib*, 2026 WL 1088618, at *4); *Bohorquez v. Mullin*, 26-CV-2053 (AMD), 2026 WL 1693948, at *6 (E.D.N.Y. June 11, 2026) ("It is difficult, if not impossible, for a detainee without such access to carry the burden of proof, making the risk of erroneous deprivation of liberty far greater."). The requirement that Petitioner bear the burden of proving he is not a flight risk, a "fundamental misallocation of the risk of error" necessitating that Petitioner prove a negative, Pet. ¶ 37, coupled with Petitioner's nearly four-month detention, "favors the need for further due process." *See Lupercio*, 2026 WL 2666844, at *5.

The final Mathews prong, the Government's interest, again favors Petitioner. "'[T]he Attorney General's discretion to detain individuals under 8 § U.S.C. 1226(a) [sic] is valid where it advances a legitimate governmental purpose,'" such as "'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 213, 218 (S.D.N.Y. June 18, 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). Here, however, there is nothing in the record to suggest that Petitioner is a flight risk. Petitioner has been living in New York, where his family resides, for nearly two years. Pet. ¶¶ 17, 20-21. Although Petitioner missed several ATD meetings, he has routinely made appearances at his immigration court hearings, including immediately prior to his re-detainment by ICE. *See* Pet. ¶ 44; Paulino Decl. ¶¶ 11-14. There is also nothing proffered in the record to suggest that Petitioner is a danger to the community. Petitioner's sole point of criminal history is a trespass conviction stemming from his 2024 border crossing into the United States. *See* Pet. ¶¶ 18-19. Therefore, "[w]hile the Government's interest may have initially outweighed short-term deprivation of [Petitioner]'s liberty interests, that balance shifted once his

imprisonment became unduly prolonged." *Velasco Lopez*, 978 F.3d at 855. Respondents have failed to show a significant interest in Petitioner's continued detention.

In totality, all three factors favor Petitioner, and Petitioner's ongoing detention violates his due process rights. Respondents fail to press arguments regarding each *Mathews* factor and instead rests on the assumption that a detention under six months in length is presumptively constitutional. *See* Return at 11-12. But Courts at this Circuit have with some frequency held that a Petitioner's detention may be unreasonably prolonged prior to the six-month mark when the *Mathews* factors highly favor a noncitizen, such as here. *See, e.g.*, *Joseph v. Arteta,* 26-CV-2979 (JGK), 2026 WL 1193489, at *7 (S.D.N.Y. Apr. 30, 2026); *Sosa v. Warden of Orange Cnty. Corr.*, 26 CIV. 2304 (DEH), 2026 WL 1803814, at *6 (S.D.N.Y. June 23, 2026); *Bohorquez*, 2026 WL 1693948, at *6; *Habib*, 2026 WL 1088618, at *4. Moreover, if the Government plans to continue to deprive the Petitioner of his liberty while his appeal to the BIA remains pending, his already four-month detention may very well exceed six months. *See Bohorquez*, 2026 WL 1693948, at *6 ("The government plans to deprive the petitioner of his liberty while it appeals the IJ's grant of asylum, a process that is sure to exceed six months").

**C. Procedural Protections Due**

Petitioner argues that he is entitled to immediate release and, alternatively, a burden-shifted bond hearing. "Ordinarily, the remedy for unreasonably prolonged detention is a constitutionally adequate bond hearing before an IJ." *Sosa*, 2026 WL 1803814, at *7 (quoting *W.A.C. v. Rokosky*, 836 F. Supp. 3d 577, 587 (D.N.J. May 18, 2026)). Indeed, Petitioner's ongoing detention violates his due process rights, and he is therefore entitled to a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that he is a danger to the community or a risk of flight. *See Bohorquez*, 2026 WL 1693948, at *8 (finding all three *Mathews* factors weighed

in favor of petitioner such that "[t]he government must give the petitioner another bond hearing, at which it must demonstrate by clear and convincing evidence that the petitioner is a danger to the community or a flight risk" and that "[i]f the government cannot do so, it must release the petitioner"). Petitioner's request for a burden-shifted bond hearing is granted.

Petitioner also asks that, if this Court orders a bond hearing, the Court elect to hold the bond hearing itself rather than defer to an IJ. "The Court does not find that the circumstances here provide 'basis to depart from the common practice of ordering a bond hearing before an IJ, whose expertise and experience in this area will enable efficient resolution of the proceedings consistent with immigration court precedents.'" *Lupercio*, 2026 WL 2666844, at *6 (quoting *D.C. v. Noem*, 825 F. Supp. 3d 309, 325 (S.D.N.Y. Mar. 20, 2026); *contra L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 405-06 (E.D.N.Y. June 25, 2025) (determining that the district court could hold the bond hearing given the noncitizen's complicated detention history that merited heightened scrutiny).

**CONCLUSION**

For the foregoing reasons, the Petition is granted. Respondents are ordered to provide Petitioner with an individualized bond hearing before an Immigration Judge by November 4, 2026. At that hearing, the Government shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk, *see Velasco Lopez*, 978 F.3d at 855-56, and at which the adjudicator must consider alternatives to detention as to both danger and flight risk, as well as ability to pay, in setting any bond. In the event Respondents fail to provide Petitioner with such a bond hearing by November 4, 2026, Respondents are ordered to release Petitioner immediately. By November 4, 2026, Respondents shall certify compliance with

this order by filing on the docket and noting specifically the outcome of the bond hearing or that Petitioner has been released.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

October 23, 2026
Brooklyn, New York